IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BAG OF HOLDINGS, LLC,<br>             Plaintiff,<br><br>     v.<br><br>CITY OF PHILADELPHIA and<br>KENYATTA JOHNSON,<br>             Defendants. | CIVIL ACTION<br><br><br><br><br>NO.  14-6774 |

### MEMORANDUM OPINION

Plaintiff Bag of Holdings, LLC, brings this action alleging that Defendant Kenyatta Johnson, a Philadelphia City Councilman, violated its constitutional right to Equal Protection by improperly influencing the sale of City-owned land and depriving Plaintiff of the opportunity to participate in a competitive bidding process.  Before the Court are the parties' respective Motions for Summary Judgment.  Defendant moves for summary judgment on the basis of legislative immunity, qualified immunity, and Plaintiff's failure to make out a prima facie case.  Plaintiff opposes and separately moves for summary judgment in its favor on the ground that it has met its prima facie burden.

**I.      Background**

Bag of Holdings, LLC ("BOH") is a real estate development and holding company established in or around 2011 by Ori Feibush ("Feibush") and Michael Pollack ("Pollack").  Joint Appendix ("JA") 432.  Pollack became the sole owner and employee of BOH within two weeks of its inception.  *Id.*  Defendant Kenyatta Johnson ("Johnson") was elected in 2011 to serve as a City Council member for the 2nd Councilmanic District in the City of Philadelphia ("the City").  JA 24, 26, 60.

In its complaint, BOH alleges that the City requires a competitive sales process to dispose of City-owned properties.  Am. Compl. at ¶ 9.  BOH claims that Johnson violated City policy and circumvented the competitive process when he effectuated the sale of City properties to "political insiders" for less than market value.  *Id.* at ¶¶ 16-19, 33.  BOH argues that Johnson's conduct resulted in it being treated differently from similarly-situated real estate developers without any rational basis.  *Id.* at ¶ 44.

**A.  City Land Sales**

The Philadelphia City Code requires that all City-owned real property be advertised to the public and opened to competitive bids before being sold, provided that "that no sale shall become final without specific approval by City Council."  *See* Philadelphia, Pennsylvania, Municipal Code § 16-201; JA 254, 526.  This proviso, commonly known as the "councilmanic prerogative," operates in practice as a veto; whatever the outcome of a competitive sales process, a councilmember may prevent the sale of a parcel of land by declining to introduce legislation to the City Council.  JA 66-68.

In 2012, a City policy was issued for the sale of real property owned by the Philadelphia Redevelopment Authority ("RDA"), the Philadelphia Housing Development Corporation ("PHDC"), and the City of Philadelphia's Department of Public Property ("PDPP").  JA 442.  The policy was never codified into law, but directed these agencies to utilize an "open market" approach whenever (i) a prospective purchaser offered less than the asking price or (ii) multiple entities expressed an interest in purchasing a property.  JA 266-67, 440-51.  A property could be sold at a discount for projects aimed at affordable housing, economic development, community development, or side yards, but "the City retain[ed] its rights to approve or reject the best Qualified Offer, based on clear criteria . . . ."  JA 445.

In 2014, the policy was revised to allow several methods through which the agencies could sell a parcel: give preference to a buyer who intended the land be used for a "public purpose;" determine the most qualified applicant on its own; utilize a competitive bidding process; or engage in a direct sale with an individual buyer. JA 184, 255, 459-63. In the event of a direct sale, the "decision and its rationale" would be reviewed by the Real Estate Review Committee and the price determined by an appraisal. JA 459.

For the buyer, the first step in acquiring a City-owned property is to submit an "expression of interest" through the City's website, where it is routed to the agency that owns the parcel. JA 254-56. The RDA, led during the relevant time period by Executive Director Brian Abernathy ("Abernathy"), was responsible for maintaining the website until January 2014. *Id.* If multiple expressions of interested are submitted for a single property, it is generally held for a competitive disposition by the City agency that owns the parcel. Abernathy testified that a councilperson's office cannot compel the RDA to sell property to any one individual, and that the land sale process is designed to "forc[e] the [RDA] and City Council to be partners." JA 259-60. However, if a City councilmember requests a direct sale and provides the prospective buyer with a letter of support, the property will be sold directly to that individual regardless of how many expressions of interests are received. JA 331, 347, 402-03.

In any event, once the relevant City agency completes its review, the Vacant Property Review Committee ("VPRC") assesses the sale and, if it is accepted, drafts a resolution for introduction in City Council for final approval. JA 403-04. If the City Council passes the resolution, the RDA acts as a transfer agent, conducts a closing, and transfers the property to the buyer. *Id.*

### B. Councilman Johnson's Practices

Johnson testified that his role in real estate development, as a councilmember, was "mak[ing] sure long-term residents can stay inside their home . . . my policy goes – revolves around affordable housing projects, workforce housing projects, and I support market rate housing projects." JA 34. Johnson also testified that he provided "letters of support for individuals . . . seeking to develop in the 2nd Councilmanic District" and fielded complaints from constituents about developers. JA 27, 202.

Stephen Cobb, Esq., who is Johnson's Director of Legislation and assists in overseeing development, communicated with Abernathy every few weeks regarding City land sales in Johnson's District. JA 198, 265. On at least three occasions, a representative from Johnson's office requested that the RDA approve the direct sale of a property over multiple expressions of interest. JA 268-69. Some of the direct sale properties were sold below market value, without the completion of an appraisal or a review by a Real Estate Review Committee, in apparent violation of the City land sale policies. JA 259-60, 270. Abernathy communicated his concerns about the direct sales to both Cobb and Johnson. JA 260-61. Johnson informed Abernathy that he would not sell "anything at fair market value for fair market value development" in the Point Breeze or Grays Ferry neighborhoods of his district. JA 270. In November 2014, the Deputy Director of the RDA sent an email to Abernathy describing a discussion she had with Cobb in which Cobb said that the City's land policy was "just policy – its [sic] not the law . . . ." JA 489.

### C. BOH's Expressions of Interest

Between 2012 and 2014, BOH submitted expressions of interest for approximately twenty City-owned vacant lots located within Philadelphia: 1914 Ellsworth Street; 1927 Manton Street; 1929 Manton Street; 2117 Latona Street; 2121 Latona Street; 1315 S. Dorrance Street;

4

1248 South 20th Street; 1321 S. Dorrance Street; 1130 South 24th Street; 1200 South Bucknell Street; 2040 Titan Street; 2046 Titan Street; 1306 South 21st Street; 1308 South 21st Street; 1310 South 21st Street; 1312 South 21st Street; 2009 Oakford Street; 2021 Oakford Street; 2416 Manton Street; and 1303 South 23rd Street ("the Properties").  *See* Defendant's Request for Admissions, JA 497-506.[1]  Although each of the Properties received multiple expressions of interest, all were conveyed outside of a competitive sales process and BOH was unable to purchase any of them.  JA.  272, 290-92, 491-96.

Three of the Properties were sold directly to Hayman Construction, a construction firm owned by Felton Hayman ("Hayman"), for less than market value; Hayman is a friend of Johnson's and contributed to his political campaign.  JA 92, 94, 96, 484-87, 492-94.  Two were sold directly to Wilson Drake Development, LLC, "care of" Anthony Drake ("Drake"); Drake contributed to Johnson's political campaign.  JA 96-97, 495-96.  Two of the Properties were also sold directly to Distinguished Properties, LP, "care of" Sanjiv Jain ("Jain"); Jain has a close relationship with one of Johnson's childhood friends.  JA 98, 491.

## II.   LEGAL STANDARD

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 345 (2010) (citations and internal quotation marks omitted).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine*

---

[1] A matter is deemed admitted by a party opponent if he fails to serve a written answer or objection to the matter asserted within thirty days.  Fed.  R.  Civ.  P.  36.  Defendant failed to respond within 30 days of BOH's request; therefore, the allegations are deemed admitted.  *See e.g.*, *Skoczylas v. Atlantic Credit and Finance, Inc.*, Civ. A. No. 00–5412, 2002 WL 55298 (E.D.Pa. 2002).

5

issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). A fact is material if it might affect the outcome of the suit under the governing law. *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). "The reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). However, to prevail on a motion for summary judgment, "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Jakimas v. Hoffmann-LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (citing *Anderson*, 477 U.S. at 252).

## II.  ANALYSIS

### A.  Qualified Immunity

Johnson argues that summary judgment should be granted in his favor because he is entitled to qualified immunity. Qualified immunity shields government officials from civil damages liability unless the official: (1) violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct. *See e.g.*, *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012); *Taylor v. Barkes*, 135 S.Ct. 2042 (2015). To be clearly established, the "right must be sufficiently clear [such] that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 132 S.Ct. at 2093.

BOH argues that Johnson's practice of encouraging the direct sale of properties to specific individuals had a "disparate impact[2]" on BOH as a developer.  Pl. Mtn. at 21.  BOH further claims that Johnson had no rational basis to treat BOH differently than the similarly-situated developers who actually acquired the properties, thereby violating BOH's right to Equal Protection under the law.  *Id.* at 21-22.  BOH asserts that the constitutional right to equal application of the City's land sale policies is self-evident and that Johnson was on notice of the illegality of his conduct as a result of Abernathy's conversations with Cobb and Johnson.  Pl. Opp'n at 11-12.

When the material facts are not in dispute, as is the case here, the question of whether a government official has established the defense of qualified immunity is a matter of law.  *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  The Court begins the analysis with the second prong: whether the right was clearly established at the time of the challenged conduct.  S*ee Egolf v. Witmer*, 526 F.3d 104, 110 (3d Cir. 2008); *Ashcroft v. al-Kidd,* 563 U.S. 731, 731 (2011) (courts have discretion as to the order in which to address the two-part test).  In analyzing the applicable law pursuant to the second prong of the test, there need not be a case directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd,* 563 U.S. at 731.

BOH implicitly acknowledges the dearth of applicable law in its brief where, beyond the relevant legal standards, it failed to cite a single case on point.  Pl. Opp'n at 11-12.  At oral argument, BOH's counsel conceded that the case is "a matter of first impression before the Court," and that "this issue has never been before the Court . . . ."  Tr. at 7.  In addition to the lack of relevant precedent, BOH has not elicited any evidence that Johnson was advised that his

---

[2] The term "disparate impact" covers policies, practices, rules, or other systems that appear to be neutral, but result in a disproportionate impact on protected groups.  *See generally*, *Ricci v. DeStefano*, 557 U.S. 557 (2009).  BOH has not alleged that it belongs to a protected group or cited any facts that would support a disparate impact claim.

conduct was unlawful. Nevertheless, BOH argues that the constitutional violation is self-evident because Johnson allegedly violated the City land sale policies and because Cobb, as a licensed attorney, "should have known" that Johnson's conduct was unlawful.[3] Pl. Opp'n at 11-12.

Here, while Johnson's alleged conduct may have raised "ethical concerns" with Abernathy about a City policy, given the lack of guidance on this subject from any appellate court, it cannot be said that "*every* reasonable official would have understood" that Johnson's communications with the RDA and the services extended to his constituents violated BOH's constitutional rights. *Reichle*, 132 S.Ct. at 2093 (emphasis added). Thus, it cannot be said that "existing precedent [had] placed . . . beyond debate" that BOH had a right to engage in a competitive sale process for City-owned properties. *al-Kidd*, 131 S.Ct. at 2083. Johnson could not be reasonably expected to know the law forbade the subject conduct; therefore, the qualified immunity defense must be sustained. *See Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982).[4]

Accordingly, summary judgment will be granted in Johnson's favor.

**Dated:** **March 3, 2016**

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

_____

**WENDY BEETLESTONE, J.**

---

[3] BOH fails to cite a single case supporting its argument that the fact that a party was represented by an attorney warrants a conclusion that Johnson knew that his conduct violated the law. Pl. Opp'n at 12.

[4] Because the Court grants summary judgment on the basis of qualified immunity, it need not reach Johnson's legislative immunity defense or address whether BOH has made out a prima facie case.